IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HONORABLE ANN H. LOKUTA, | : |
| | : No.05cv855 |
| Plaintiff | : |
| | : Judge Jones |
| v | : |
| | : |
| SECURITY INSURANCE | : |
| OF HARTFORD, | : |
| | : |
| Defendant | : |

**MEMORANDUM AND ORDER**

**April 17, 2006**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion for Summary Judgment ("the Motion") (doc. 27) filed by Defendant Security Insurance of Hartford ("Defendant" or "Hartford") on March 1, 2006. For the reasons that follow, the Motion will be granted.

**PROCEDURAL HISTORY:**

The Plaintiff, the Honorable Ann H. Lokuta ("Plaintiff" or "Judge Lokuta"), a judge of the Court of Common Pleas of Luzerne County, commenced this action by filing a complaint in the Court of Common Pleas of Luzerne County on March

31, 2005 against Royal Insurance Company.[1]  On April 28, 2005, Defendant removed the case sub judice to this Court.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 and § 1441 as the parties are of diverse citizenship and the amount in controversy is over $75,000.

In her complaint, Plaintiff alleges that Defendant has failed to pay medical bills totaling $4818.00 for treatment from various providers and treatment dates ranging from March 2002 through February 2004.[2]  Plaintiff's complaint consists of three counts: Count I is entitled "Violation of 1712 and 1702;" Count II is a bad faith claim; and Count III is a civil conspiracy claim.  In our March 13, 2006 Order, we memorialized stipulations entered into on that date by the parties on the record.  One such stipulation included Plaintiff's voluntary dismissal of Counts II and III of her complaint, specifically, her bad faith claim and her civil conspiracy claim.  In our March 13, 2006 Order, we therefore explained that Count I is the only remaining count in Plaintiff's complaint, which will form the basis for our resolution of Defendant's Motion.  (Rec. Doc. 31).

On March 1, 2006, Defendant filed the instant Motion, which has been

---

[1] We note that the Defendant, Security Insurance of Hartford, was improperly identified as Royal Insurance Company in the complaint.

[2] As will be described in more detail below, despite Plaintiff seeking $4,818.00 in unpaid medical bills in her complaint, the record reveals that Plaintiff may be seeking $4941.00 in medical bills allegedly wrongfully denied.  (Rec. Doc. 27, Ex. A at ¶ 9, Ex. C at 0329).

briefed by the parties.  The Motion is therefore ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them.  Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue for trial.  FED. R. CIV. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to materiality, the substantive law will identify which facts are material."  Id. at 248.  A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

**<u>FACTUAL BACKGROUND:</u>**

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, Plaintiff, in our analysis of the pending Motion.

Local Rule ("L.R.") 56.1 governs motions for summary judgment. We note with some disappointment Plaintiff's failure to adhere to the strictures of L.R. 56.1, in particular the requirement that:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [filed by the moving party], as to which it is contended that there exists a genuine issued to be tried.

(emphasis added).

Defendant's statement of material facts consists of twenty-six numbered paragraphs supported by references to the record as required under L.R. 56.1. Plaintiff, however, merely states, "Plaintiff agrees with the following paragraphs: the Defendant's Statement of Undisputed Facts Paragraphs 1 to 10, 13 to 15 and denies all other of Defendant's statements." (Rec. Doc. 33). Additionally, Plaintiff utterly fails to provide specific denials to any of Defendant's statement of material facts. In that regard, Plaintiff's "Counterstatement of Fact," consists of seven numbered paragraphs in which arguably only one paragraph may be

5

construed as opposing one paragraph of Defendant's statement of material facts. All other paragraphs presented by Plaintiff are unrelated to Defendant's statement of material facts.  Moreover, Plaintiff has failed to include references to the parts of the record that support the statements on several occasions, in contravention to L.R. 56.1.[3]  Notably, L.R. 56.1 provides instruction when its strictures are not followed.  "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."  Accordingly, paragraph one of Plaintiff's "Counterstatement of Fact" will be construed as controverting paragraph eleven of Defendant's statement; however, all remaining paragraphs of Defendant's statement must be deemed to be admitted in accord with L.R. 56.1.[4]

Plaintiff was involved in three accidents in 1992 and 1993.  The subject accident occurred when the car being operated by Plaintiff was struck by a tractor-trailer on the Pennsylvania Turnpike.  Following the impact, Plaintiff's vehicle began to skid, she was able to avoid hitting the guardrail, and she brought her vehicle to a stop.  Plaintiff was taken by ambulance to Quakertown Hospital, where

---

[3] We will very respectfully submit that of all people, the Plaintiff should recognize the rationale for this Rule.  Indeed, as has been oft stated, judges are not like pigs searching for truffles buried in submissions.  See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

[4] We note that the Local Rules for the United States District Court for the Middle District of Pennsylvania may be found at: http://www.pamd.uscourts.gov/docs/LR12012005.pdf.

she was treated for pain in her left shoulder and back. She was released approximately one and one-half hours later and drove herself home from the hospital in her own vehicle. (Def.'s SMF at ¶ 4).

Plaintiff, through her present attorney, Charles R. Pedri, Esquire ("Mr. Pedri"), filed a prior action seeking payment of medical expenses, wage loss, and attorney's fees stemming from the October 5, 1992 accident in the Court of Common Pleas of Luzerne County (hereinafter "the 1996 action"). See Lokuta v. Royal Insurance Co., No. 5894-C (Luzerne Cty. 1996); Def.'s SMF at ¶ 5. In the 1996 action, Plaintiff made claims for payment of medical bills and wage losses arising from the October 5, 1992 accident. The 1996 action was settled on June 27, 2001 in the amount of $5,000.00 for wage loss benefits and $3,000.00 for attorney's fees. (Rec. Doc. 27, Ex. D). In connection with this settlement, Plaintiff executed an "Indemnifying Release and Release of All Work Loss Benefit Claims" ("the Release") which specifically released "claims and actions for contractual benefits and/or extra contractual claims of whatever nature except for medical benefits and underinsured motorist claims under Policy No. DDAHA 75-19[.]" Id. at 1.

Following settlement, Defendant paid all outstanding medical bills. On August 13, 2001, Mr. Pedri forwarded additional bills to Louis Kornfiend

("Kornfiend"), a representative of Defendant, which were paid. Plaintiff continued to pursue the underinsured motorist claim which was brought as part of the 1996 action. The underinsured motorist claim was submitted to arbitration and remains pending. In November 2002, Defendant received medical bills from Northeast Physical Therapy, which were initially routed to the underinsured motorist claim. After it was determined that such bills purportedly represented treatment for injuries sustained by Plaintiff in the October 5, 1992 accident, that claim was reopened. Defendant subsequently received additional bills, which are detailed in its statement of material facts. (Def.'s SMF at ¶ 14). All of the bills at issue were denied, with denial notices sent to all providers.

In Plaintiff's complaint, she alleges that the medical bills at issue should have been paid by Defendant in accordance with an agreement purportedly entered into at or about the time of the settlement of her previous claim in the Luzerne County Court of Common Pleas. There is no contemporaneous writing memorializing the terms of the alleged agreement and the only writing referencing this alleged agreement cited to in Plaintiff's complaint is a letter from Mr. Pedri to Kornfiend dated July 29, 2003. (Rec. Doc. 27, Ex. B). The July 29, 2003 letter requests payment of medical bills totaling $3,846.00. Plaintiff testified that the alleged agreement required her to submit to a comprehensive examination by

Thomas Byron, M.D. ("Dr. Byron"), which she did on September 7, 2000. (Def.'s SMF at ¶¶ 8-9). Plaintiff contends that the purported agreement provided that she was to continue to see Dr. Byron, follow his medical advice, and that her medical bills would be paid. Id. at ¶ 9; Rec. Doc. 27, Ex. B at 23-37. In addition, Plaintiff testified that if Dr. Byron had suggested that treatment was unreasonable, Defendant had a right to contest that treatment. (Rec. Doc. 27, Ex. B at 40-41).

Plaintiff's attorney at the time of the purported agreement was her present attorney, Mr. Pedri. He testified he believed that he had some discussions with Defendant's attorney and Kornfiend following the settlement conference in which Mr. Pedri asked for a contact person for submission of Plaintiff's future medical bills. Mr. Pedri also requested that Plaintiff's treating physician, Dr. Byron, be used as a "clearing house" for issues regarding medical expenses. Mr. Pedri testified that Defendant's attorney agreed to this after consulting with Kornfiend. (Def.'s SMF at ¶ 10; Rec. Doc. 27 at Ex. E). Kornfiend, who was present at the conference at which the discussion described above purportedly took place, indicated that a discussion with regard to Dr. Byron's role regarding future medical payment could have occurred; however, he had no recollection of any such discussion. (Def.'s SMF at ¶ 11; Pl.'s SMF at ¶ 1; Rec. Doc. 27 at Ex. F at 27). Nancy Mancheski, Esquire ("Mancheski"), who represented Defendant during the

above-referenced settlement conference, additionally has no recollection of the alleged discussion.  (Def.'s SMF at ¶ 12).  Moreover, Mancheski's affidavit reveals that it is her position that had some additional agreement been made between Plaintiff and Defendant substituting Dr. Byron's judgment as to reasonableness and necessity or causal connection for the procedures otherwise available under the Motor Vehicle Financial Responsibility Law ("MVFRL"), Mancheski would have commemorated that agreement to writing.  Id.; see also Rec. Doc. 27, Ex. G.  According to the policy in effect at the time of the accident at issue, Defendant agreed to pay reasonable expenses incurred for necessary medical treatment for bodily injury caused by an accident.  (Def.'s SMF at ¶ 13; Rec. Doc. 27, Ex. H).

As noted, Plaintiff claims payment for a total of either $4,818.00 or $4,941.00 in medical bills allegedly wrongfully denied.[5]  (Rec. Doc. 27, Ex. A at ¶ 9; Rec. Doc. 27, Ex. C at 0329).  Following an independent medical examination of Plaintiff, orthopedist Leonard A. Brody, M.D. ("Dr. Brody") concluded that, while Plaintiff appeared to have bilateral radiculopathy related to the October 5, 1992 accident, further treatment through physical therapy would not provide any benefit.  (Def.'s SMF at ¶ 16; Rec. Doc. 27, Ex. I).  Following another independent medical examination of Plaintiff, neurologist Richard I. Katz, M.D. ("Dr. Katz"), concluded

---

[5] We need not provide an exhaustive list of the medical bills at issue at this juncture.

that Plaintiff no longer required diagnostic tests of therapeutic treatment related to pain complaints referable to the 1992 accident. (Def.'s SMF at ¶ 17; Rec. Doc. 27, Ex. J).

**DISCUSSION:**

    A.    **Plaintiff's Claim for Payment of Medical Bills**

In the Motion, Defendant argues that summary judgment should be granted as to Plaintiff's claim for payment of medical bills as Plaintiff has failed to offer any expert opinion as to causation and/or necessity of treatment. In that regard, Defendant asserts that no jury could find that it is obligated to pay the medical bills at issue because Plaintiff has failed to produce an expert report establishing a causal relationship between the conditions for which Plaintiff received treatment and the October 5, 1992 accident.

After a careful review of the record and submissions by the parties, we agree with Defendant that Plaintiff has failed to provide an expert opinion that establishes a causal relationship between the outstanding medical bills and their relationship to injuries sustained by Plaintiff in the October 5, 1992 accident, for the reasons that follow.

We initially note that Plaintiff has failed to attach any of the documents relied upon in her brief opposing Defendant's Motion, including medical records

11

and the report of Dr. Byron. Although Plaintiff indicates in her responsive submission that Defendant has "secured the records of both Dr. Byron and Dr. Boonin through subpoenas which cover the entire treatment from 1992 to present of the Plaintiff" and that she "has provided an expert report of Dr. Byron on March 1, 2006," such documents, notably including Dr. Byron's expert report, have not been filed by Plaintiff with the Court. (Pl.'s Br. Opp. Def.'s Mot. Summ. J. at 2). A thorough review of the record appears to confirm Defendant's assumption that the documents referred to by Plaintiff in her submission are in fact the documents that were previously supplied to Defendant, entitled "Supplemental Answers to Expert Interrogatories," and which include a brief letter from Dr. Byron accompanied by some of Plaintiff's medical bills. One of the documents referred to in Plaintiff's submission, the "forthcoming" report of Dr. Boonin, apparently does not exist at this juncture.[6]

As Plaintiff has relied upon Dr. Byron's expert report as a reason to deny

---

[6] Notably, as accurately submitted by Defendant, by Order of this Court, we set the time for completion of discovery to be February 17, 2006, the time for production of Plaintiff's expert reports to be February 11, 2006, and the time for production of Defendant's expert reports to be February 15, 2006. (Rec. Doc. 10). Following a telephonic conference with the parties to discuss then pending discovery disputes, the Court extended the discovery deadline to February 23, 2006 and all other deadlines remained in effect. (Rec. Doc. 17). In contravention of these deadlines, Plaintiff failed to provide any expert reports until on or about March 1, 2006 and as noted, to the best of the Court's knowledge, Plaintiff has not filed an expert report of Dr. Boonin to date.

summary judgment in the case sub judice, we will consider his report at this juncture. A February 28, 2006 letter from Dr. Byron to Mr. Pedri indicates that he evaluated Plaintiff from September 7, 2000 until January 1, 2002. (Rec. Doc. 41, Ex. O). Dr. Byron indicates the documents he reviewed, which are clinic notes or medical reports, and delineates several of Plaintiff's medical bills that were provided to him by Mr. Pedri. Dr. Byron then states the following:

> These bills reflect ongoing treatment of the symptoms which have been described to me on a number of occasions by Judge Lokuta and would be consistent in someone under treatment for thoracic outlet syndrome and/or fibromyalgia.
>
> My note, which is enclosed, from September 7, 2000 reflects the history and physical coincident with the symptoms at that time referable to her 1992 automobile accident.

Id. Dr. Byron attached Plaintiff's medical records from her office visits with him. Id.

We do not find that Dr. Byron's report adequately states, to a reasonable degree of medical certainty, that Plaintiff's treatment at issue was caused by the accident or was medically necessary to treat injuries caused by the accident. Dr. Byron's letter is not responsive to the questions at hand.[7] In addition, the medical

---

[7] We will venture an educated guess that the letter from Dr. Byron was prepared hurriedly by him, in response to an "eleventh hour" solicitation by Plaintiff's counsel, thus explaining the fact that it is not responsive to the causation and necessity issues relating to the specific bills in question.

records referred to by Plaintiff do not make reference to causation or medical necessity.  Accordingly, Plaintiff has failed to provide a single expert opinion that her medical bills are related to injuries sustained in the October 5, 1992 accident. The plain language of the policy, in effect between the parties at the time of the accident at issue, indicates that Defendant agrees to pay reasonable expenses incurred for necessary medical treatment for bodily injury caused by an accident. (Def.'s SMF at ¶ 13; Rec. Doc. 27, Ex. H).  Defendant is therefore only obligated to pay Plaintiff's medical bills if such bills are for treatment that is necessary to treat injuries caused by the October 5, 1992 accident.

In a motor vehicle accident case, an injured plaintiff must establish the causal relationship between the injury complained of and the treatment for which compensation is sought.  As the Third Circuit Court of Appeals instructed, generally causation must be established through expert medical testimony.  See In re Dobrowsky, 735 F.2d 90, 92-3 (3d Cir. 1984); Lattanze v. Silverstrini, 448 A.2d 605, 608 (Pa. Super. 1982).  As we previously stated, Plaintiff has failed to provide an expert opinion that establishes a causal relationship between Plaintiff's outstanding medical bills and their relationship to injuries she sustained in the October 5, 1992 accident.  Moreover, Plaintiff cites to no authority for the proposition that the record provides adequate evidence from which a fact finder

could determine that the treatment at issue is causally related to the accident and medically necessary to treat the injuries sustained in the accident.[8]  Accordingly, summary judgment is granted with regard to Plaintiff's claim for payment of medical bills.

### B. Plaintiff's Claim for Attorney's Fees, Interest, and Extra-Contractual Relief

In addition to her claim for payment of medical bills, Plaintiff requests interest, attorney's fees, and treble damages in Count I of her complaint.  While as set forth, we have held that Plaintiff's essential claims for payment cannot survive, for the sake of completeness we will dispose of these ancillary claims as well.  A careful review of the Release executed by Plaintiff on June 27, 2001 reveals that such claims are barred, as will be discussed below.

We initially note that releases will be upheld in the absence of fraud or mutual mistake.  Brosius v. Lewisburg Craft Fair, 557 A.2d 27, 29 (Pa. Super.

---

[8] We are in agreement with Defendant that Plaintiff inaccurately cites Schappell v. Motorist Mutual Ins. Co., 868 A.2d 1 (Pa. Super. 2004), as holding that a medical provider is able to recover costs and attorney's fees based upon a lower quantum of proof of medical necessity.  To the contrary, Schappell involved a claim by a chiropractor for interest on late payments under the MVFRL.  The Pennsylvania Superior Court held that the MVFRL does not grant a provider a private right of action for interest claims on late payments by insurers.  The court did not discuss the quantum of proof necessary to prove medical necessity or causation, which are both at issue in the above-captioned case.

In addition, Plaintiff's reliance upon several cases that consider the exclusivity of the MVFRL as a remedy for bad faith denials of claims of this type is not relevant at this juncture in the case as Plaintiff has already voluntarily withdrawn her bad faith claims in recognition of this exclusivity.

1989) (parties injured in an automobile accident received payment from the party at fault's insurance policy and signed a release as to that party and any other parties, known or unknown, and the court held the release was enforceable). A release will be upheld where it was understood by the parties and valid consideration was paid for it. <u>Id.</u> "The effect of the release is determined by the language appearing therein . . . and the language should be interpreted as to its ordinary meaning[.]" <u>Id</u>. at 28. Moreover, in <u>Roth v. Old Guard Ins. Co.</u>, 850 A.2d 651, 652-53 (Pa. Super. 2004), the Pennsylvania Superior Court held that the release terms were unambiguous and enforceable where the parties entered a release following satisfaction of claims for property damage from a fire and the release stated that satisfaction of the claim was made "in full payment, release and discharge of all claims and demands against the said company under the certain policy of insurance." The release "clearly and unequivocally" released the insurance company from all claims related to the fire. <u>Id.</u> at 654.

     We are dismayed by the poor drafting of the Release executed by Plaintiff, who we will again note is a Judge who had the benefit of legal counsel regarding the execution of the said Release, on June 27, 2001. A careful review of the Release's plain language, however, leads us to conclude that Plaintiff is barred from collecting anything other than "contractual liability for medical expenses and

underinsured motorist claims."  (Rec. Doc. 27, Ex. D).

The fifteen line first sentence releases and forever discharges Royal Insurance Company "and all other persons and entities . . . their successors in interest . . . of and from all manner of actions, causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims, and demands whatsoever in law and equity, including claims and actions for contractual benefits and/or extra contractual claims of whatever nature." Id. at 1. Immediately thereafter is the clumsy and rather odd insertion of the phrase "except for medical benefits and underinsured motorist claims under Policy No. DDAHA 75-19 issued by Releasees[.]" The remainder of the sentence then addresses the release of work loss benefits, attorney's fees, costs and interest arising out of motor vehicle accidents which occurred on or about April 24, 1992, October 5, 1992, and October 15, 1993, as well as contributions and/or indemnity of whatever nature. The intent of the parties drafting the Release is clarified by the very next sentence which simply and succinctly states the following: "This Release does not release any contractual liability for medical expenses and underinsured motorist claims." Id. at 2.  We find that the insertion of the phrase exempting medical benefits and underinsured motorist claims under the policy in the first sentence was accordingly unnecessary, as it was aptly stated in the second sentence.  As noted, the arbitrary

17

placement of this phrase in the middle of a sentence discharging specific claims and benefits is at first blush awkward and confusing, so that our inquiry as to what the parties meant must be broadened to include other surrounding sentences.

Plaintiff's reference to what she believes to be the preservation of "statutory contract rights," including attorney's fees, interest, and treble damages, is erroneous. Plaintiff clearly released and forever discharged "extra contractual claims." To the extent that Plaintiff seeks attorney's fees and interest pursuant to 75 Pa. Cons. Stat. Ann § 1716 and treble damages pursuant to 75 Pa. Cons. Stat. Ann. § 1797(b)(4), Plaintiff should have expressly preserved both *contractual* and *statutory* rights in the above-referenced Release. She failed to do so. Indeed, the Release's plain language releases and forever discharges the payment of "work loss benefits, attorneys fees, costs and interest arising out of motor vehicle accidents which occurred on or about . . . October 5, 1992[.]" (Rec. Doc. 27, Ex. D at 1-2). These released claims are precisely what Plaintiff now seeks to assert via the instant case.

Even assuming <u>arguendo</u> that Plaintiff was not barred from collecting attorney's fees, costs, and interest, no reasonable jury could find that Defendant's conduct in denying payment of the medical bills at issue was unreasonable or wanton to warrant such payment under Pennsylvania's MVFRL. In this case,

Defendant denied payment of medical bills for treatment from various doctors presented approximately ten years after the accident at issue.  Moreover, prior independent medical exams and peer reviews had concluded that additional treatment was unnecessary, as previously noted.  Although Plaintiff claims that the denials were unreasonable because of the purported agreement that all bills would be paid, the alleged agreement cannot be the basis for a claim that Defendant's conduct was unreasonable or wanton.

Taking the evidence in the light most favorable to the Plaintiff and as previously noted, the terms of the alleged agreement are unclear and were not commemorated in a writing.  We do not believe that a reasonable jury could conclude that an agreement existed as alleged by Plaintiff.  Rather, there appear to have been certain assumptions made by Plaintiff that were never reduced to writing, thus not agreed to by Defendant.  Moreover, assuming <u>arguendo</u> that such an agreement did exist, which as noted we find to be an impossible stretch, the case <u>sub</u> <u>judice</u> does not present circumstances contemplated within the Pennsylvania MVFRL sufficient to warrant the imposition of attorney's fees, costs, and interest.

Accordingly, Defendant's Motion is granted.[9]

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (doc. 27) is GRANTED.

2. The Clerk is directed to close the file on this case.

                                                s/ John E. Jones III
                                                John E. Jones III
                                                United States District Judge

---

[9] We note that as Plaintiff accurately submits, we need not address any issues related to damages sought based upon impairment of credit, her bad faith claim that appears in Count II of the complaint, or her civil conspiracy claim that appears in Count III of the complaint as she has voluntarily withdrawn such claims. (Rec. Doc. 31).